UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-332-H

AMANDA CROSBY                                                                                                 PLAINTIFF

V.

ROHM AND HAAS COMPANY                                                DEFENDANT

**MEMORANDUM OPINION**

The parties dispute the amount of a life insurance benefit owed to the Estate of Billy K. Allred ("Allred"),[1] under the Rohm and Haas ("Rohm and Haas") Health and Welfare Plan ("the Plan"), which is governed by the Employee Retirement Income Security Act ("ERISA"). Plaintiff seeks additional benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). To resolve this dispute the Court must determine whether the benefits specified on a personalized insurance benefit worksheet can govern or effect Plaintiff's entitlement to benefits. For the reasons that follow, the Court concludes that Plaintiff is not entitled to recover benefits based upon the personalized worksheet.

I.

The relevant facts are largely undisputed. Allred was a Rohm and Haas employee at the Louisville, Kentucky facility. Effective June 12, 2000, he was promoted into the salaried position of Production Manager. From June 12, 2000 until his death, Allred was a regular, full-time salaried employee. Allred's annual salary at the time of his death was $63,675.

When Allred was first promoted to Production Manager in 2000, he became eligible for

---

[1] Plaintiff, Amanda Crosby, is the Administratrix of the Estate of Billy K. Allred.

Rohm and Haas's Group Term Life Insurance available to salaried employees. At that time, that life insurance benefit consisted of an amount equal to $10,000, plus three times the employee's annual base salary, plus any additional coverage which could be purchased in 25% increments up to a total of three times the employee's annual base pay.

In the Fall of 2000, Rohm and Haas decided to modify its Group Life Insurance coverage by reducing the company coverage and expanding options for employee purchase of additional coverage. The modifications were to take effect on January 1, 2001. Rohm and Haas says that it mailed a twenty (20) page open enrollment booklet entitled "Time to Enroll for Your 2001 Benefits" to all employees listed as salaried in a computer database (hereinafter referred to as the "Fall 2000 Booklet").[2] In a summary section entitled "What's Changing?," the Fall 2000 Booklet accurately described changes to the insurance benefit: "Company will automatically provide you with employee life insurance of two times your base pay plus any commissions." The Fall 2000 Booklet comprehensively described the changes in a chart under the heading "WHAT'S NEW IN LIFE INSURANCE." The chart states that under the new program the employee will be entitled to "Two times base pay plus any commissions," whereas under the current program, the employee is entitled to "Three times base pay." The chart describes that under the new "Supplemental employee life insurance (employee-paid)" program, the employee "may purchase up to an additional six times base pay in 100% increments," whereas under the current program, the employee "may purchase up to an additional three times base pay in 25% increments." Finally, the chart alerts the employees that under the new plan they are no longer

---

[2] Whether the booklet was actually mailed to every salaried employee appears to be the sole fact in dispute. Plaintiff alleges that Allred never received the booklet either through the mail or through any other means. The Administrator determined that the booklet was mailed to all salaried employees.

2

entitled to the payment of the $10,000 basic life insurance benefit.

The Fall 2000 Booklet also stated that "[f]or more details on your life insurance options and monthly costs, see your personalized Enrollment Worksheet that accompanies this booklet." It further stated "[b]e sure to check your Enrollment Worksheet to confirm the life insurance you'll receive in 2001 if you don't call the Benefits Center by December 13 to enroll." Indeed, along with the Fall 2000 Booklet, each salaried employee, including Allred, received an individualized Enrollment Worksheet. Each Enrollment Worksheet described the changes to the employee insurance benefits "[e]ffective on January 1, 2001 and specifically stated that employee's projected benefit." Allred's Enrollment Worksheet erroneously stated his benefits based on the plan in effect in 2000. The Enrollment Worksheet listed Allred as entitled to $10,000 in basic life insurance plus an additional $279,000, which represented three times Allred's annual salary plus 175% of his annual salary in employee-purchased coverage.

Initially, Rohm and Haas reaffirmed the erroneous calculations in subsequent correspondence. In a letter dated February, 24, 2001 and captioned as a confirmation of coverage, Rohm and Haas stated that Allred was entitled to $289,000 in life insurance benefits based upon the year 2000 plan. Within a few months, however, Rohm and Haas corrected its mistake. By a letter dated April 7, 2001, it notified Allred that he was entitled to only 100% of base pay. Furthermore, the letter stated that Allred was entitled to a total life insurance payment of $202,000.[3] On July 6, 2001, Rohm and Haas reconfirmed Allred's decrease in benefit coverage, once again stating that Allred's total coverage was $202,000.

---

[3] The letter allegedly sent on April 7, 2001 still contained an error in the benefit calculation. It informed Allred that he was still entitled to a $10,000 benefit in basic life insurance. However, after 2001, the Plan no longer entitled him to that money.

Allred passed away on December 11, 2001. After receiving proof of his death, Rohm and Haas paid $192,000 in life insurance proceeds to the Allred estate based on the Fall 2000 Booklet modifications. Because there was a discrepancy between the amount actually paid and the amount listed earlier on Allred's Employment Worksheet, Plaintiff and her attorney requested a written explanation of the payment and documentation describing the Plan. Eventually Plaintiff received documentation concerning the Plan, but was not satisfied with Rohm and Haas's explanations for denial of additional benefits.

## II.

As required, Plaintiff filed a claim for additional insurance benefits with the Administrator of the Plan. The Administrator denied the claim based on the plan in effect in the year 2000 as set forth in the Fall 2000 Booklet. Plaintiff presents his claims to this Court based upon the record established in the administrative process and upon the memoranda of the parties. The parties have filed cross-motions for summary judgment and have participated in a conference with the Court. Therefore, the Court must determine the appropriate standard of review.

Where an ERISA plan provides the administrator with discretionary authority to decide benefit claims the administrator's decision is subject to arbitrary and capricious review. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). The Sixth Circuit has described the application of the arbitrary and capricious standard of review as follows:

> When applying this deferential standard, we must decide whether the plan administrator's decision was rational in light of the plan's provisions. In other words: When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. In conducting this review, we consider only the facts known to the plan administrator at the time he made his decision.

*Id.* at 863 (internal citations and quotations omitted).  Here, Section 6.3 of the Rohm and Haas Health and Welfare Plan gives the Administrator "the sole discretion to interpret the Plan and decide any matter arising hereunder," which determinations shall be "binding on all parties." Therefore, this Court will apply an arbitrary and capricious standard of review to the Administrator's denial of Plaintiff's claim for additional life insurance monies.  This means that the Administrator's factual determinations must be reasonable and his legal conclusions not erroneous as a matter of law.

Plaintiff claims that the Estate is entitled to the life insurance benefit in place prior to the Plan's modification in 2001.[4]  Her arguments raise a variety of issues concerning the interpretation of ERISA plans, compliance with ERISA's procedural requirements and the availability of remedies.  A thorough review of Plaintiff's arguments and the relevant facts suggests that her claim rests upon three interrelated propositions: (1) Rohm and Haas never properly amended the insurance benefit from the existing plan; (2) even under the purported amendment, Plaintiff is entitled to enforce the benefits described in his personalized Enrollment Worksheet; and (3) even if Plaintiff cannot enforce the benefits described in the Enrollment Worksheet, the attempted change is unenforceable because Rohm and Haas did not properly notify Allred that the amendment had been adopted.  While some of the analysis is overlapping, the Court will attempt to consider each proposition in turn.

### III.

The easiest question to answer is whether Rohm and Haas effectively modified the Plan

---

[4] Plaintiff brings her challenge to the Administrator's denial of her claim pursuant to 29 U.S.C. § 1132(a)(1)(B), which allows for a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of the plan."

prior to Allred's death.  To modify a welfare plan under ERISA, an employer must (1) follow the amendment procedure outlined in the Plan and (2) memorialize the amendment in a formal writing.  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 85 (1995) (ERISA dictates that "whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level"); *Sprague v. General Motors Corp.*, 133 F.3d 388, 402-03 (6th Cir. 1998) (an informal written communication cannot form the basis of a plan amendment); Confer *v. Custom Engineering Co.*, 952 F.2d 41, 43 (3d Cir. 1991) ("Only a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan.").  Until such proper modification, an employee is entitled to rely upon the terms of the existing plan.  *See Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1412 (6th Cir. 1996).  Plaintiff concedes that Rohm and Haas amended the Plan in the manner specified in the plan documents.  The only question in this case is whether the purported modification met the formal writing requirement.

Rohm and Haas recorded the amendment in the Fall 2000 Booklet, which expressly professed to be a plan amendment.  *See Sprague*, 133 F.3d at 403 (finding documents to be ineffective as amendments because they did not purport to be plan documents).  It presented the changes in the life insurance benefit for salaried employees in plain language under large, clear headings.  The Fall 2000 Booklet also clearly described the reduction of a company-paid life insurance benefit to two times annual salary, the elimination of the flat $10,000 benefit and the modified structure for supplement life insurance.  Therefore, the Fall 2000 Booklet clearly qualifies as a formal written modification of an existing ERISA benefit plan.

Plaintiff argues that the modification is invalid because there is no evidence that Allred

actually received the Enrollment Booklet or the letters confirming the post-2000 coverage.  This argument is misplaced, however.  If Allred never received any notice that the amendment had been adopted, then Rohm and Haas may have violated its disclosure obligations under ERISA.  See 29 U.S.C. § 1024(b)(1) ("The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of . . . all modifications and changes" to the plan).  However, the violation of a notice provision is a different issue from determining whether Rohm and Haas adopted an amendment in the first place.

Therefore, the Court holds that the Administrator's conclusion that Rohm and Haas amended its welfare plan was reasonable and was not arbitrary, capricious or erroneous as a matter of law.

IV.

Next the Court must address a much more complicated issue.  Plaintiff argues that even if Rohm and Haas properly amended its Plan, she is entitled to enforce the benefits described in Allred's individualized Enrollment Worksheet.  The success or failure of Plaintiff's claim depends upon whether the estimates contained in Allred's Enrollment Worksheet constitute "terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  The Court finds the Sixth Circuit authority and logic itself weighs strongly against making the Enrollment Worksheet part of the Plan.

There is no question that an ERISA plan is subject to liability based upon reliance on misstatements contained in a summary plan description ("SPD"),[5] even when the misstatements conflict with the plan itself.  *See, e.g., Edwards v. State Farm Mutual Auto Co.*, 851 F.2d 134

---

[5] An SPD is a written summary, which plan administrators have a duty to furnish, that apprises plan participants and beneficiaries of their rights and obligations under the plan. 29 U.S.C. § 1022(a). Section 1022(b) of ERISA sets forth a detailed list of the information that an SPD must contain.

7

(6th Cir. 1988). However, as a general rule, an individualized benefit certificate, such as the Enrollment Worksheet here, is not an SPD. *Flacche v. Sun Life Assurance Co. of Canada*, 958 F.2d 730 (6th Cir. 1992). In *Flacche*, the plaintiff received inflated pension benefits based on a calculation mistake and received from the defendant a Summary of Benefits Certificate that reflected the erroneous, inflated figure. When the pension amount was reduced to the correct figure upon the discovery of the mistake, the plaintiff sued, claiming, *inter alia*, that it was a violation of the plan not to honor the Summary of Benefits Certificate. In affirming the summary judgment dismissal of that claim, the Sixth Circuit Court of Appeals held that "The Summary of Benefits Certificate is not an SPD under ERISA." *Id*. at 736.

To be sure, our case is different from *Flacche* in some respects. Unlike the summary of benefits worksheet in *Flacche*, Allred's worksheet accompanied a binding plan document–here the Fall 2000 Booklet–that explicitly referred to the worksheet. Also, *Flacche* concerns pension benefit calculations, rather than insurance plans. The question here is whether the *Flacche* rule holds in these circumstances. The Court believes that it should.

At least one federal court has discussed the legal effect of a mistaken personalized benefits statement that, as here, is explicitly referred to in a binding plan document. *See Fitch v. Chase Manhattan Bank, N.S.*, 64 F. Supp. 2d 212 (W.D.N.Y. 1999). In *Fitch*, the defendant implemented a voluntary retirement program under ERISA. The defendant issued an SPD booklet to eligible employees, with personalized statements of benefits for each employee attached to the booklet. As in our case, the SPD booklet accurately described the program terms and specifically referenced an accompanying personalized benefit statement. *Id.* at 218. As it turned out for 61 out of 2200 eligible employees, those personalized statements erroneously

8

inflated their future benefits. Although the defendant detected and corrected the mistake at a later time, the plaintiffs sued under section 1132(a)(1)(B) for the higher benefit stated on the personalized statements.

Directly addressing the same issue raised here, the court held that the personalized statements "provided to the plaintiffs along with their VRP materials are not terms of the Chase Plan or the . . . SPD" and were more akin to non-plan "informal communications." *Id.* at 226. The court reasoned that it was "implicit that the estimates [contained in the personalized statements] were subject to change based upon mistake." *Id.* at 226. Therefore, the district court held that even though the SPD explicitly referred to the personalized statements and even though they were sent as part of the same information package, the statements were not enforceable plan documents. *Id.*

The facts of our case are closely analogous to those in *Fitch*. Like the summary plan description in *Fitch*, the SMM in Rohm and Haas's informational package accurately described the modified terms of the Plan. Although the Enrollment Worksheet miscalculated Allred's life insurance benefit, the miscalculation was the only inaccuracy contained in the entire informational package. Just like the calculations in *Fitch*, the calculations here were subject to change based on uncertain events in the future, such as Allred's salary level at the time of his death.

More important *Fitch*'s logic makes sense. The entire ERISA scheme encourages official communications with all participants as opposed to more informal individualized communications. Moreover, ERISA is designed to ensure that all participants are treated equally. These two values are disregarded when some participants benefit over others due to a

mistake in an individual communication. Turning the tables on the mistake helps to clarify the issue. If the Enrollment Worksheet had underestimated Allred's coverage, the plaintiffs would never have accepted the error as being a term of the post-2000 Plan. *See id.* Instead, at that point Plaintiff would have argued, correctly, that regardless of the erroneous estimate, the Estate was entitled to receive benefits based on the official and formal communication contained in the SMM. Existing case law fully protects a plan participant who is unfairly or detrimentally prejudiced by such a mistake. Under the logic of *Fitch*, which this Court finds convincing, in most circumstances a mistaken calculation or communication of individual benefits is not binding upon either the Plan or its participants.

Accordingly, like the court in *Fitch*, this Court concludes that Allred's Enrollment Worksheet is not part of the SMM and cannot be used as a basis for his benefits in these circumstances. For the Administrator to reach a similar conclusion to disregard the Enrollment Worksheet, therefore, is not erroneous as a matter of law.

V.

The final question overlaps conceptually with the first two. After an employer adopts a material modification to a welfare plan, the employer must furnish to the plan participants and beneficiaries a summary of the material modification ("SMM") that is calculated to be understood by the average plan participant. 29 U.S.C. § 1022(a). Plaintiff argues that the post-2000 amendment cannot be given legal effect because Rohm and Haas failed to meet these disclosure obligations under ERISA.

First, Plaintiff argues that the initial notification package allegedly sent was not "written in a manner calculated to be understood by the average plan participant." Id. Immediately after

adopting the modification, Rohm and Haas sent two documents to each plan beneficiary. The Fall 2000 Booklet outlined the general changes to the Plan; an Enrollment Worksheet calculated the actual benefits for each individual participant. The two documents that Allred allegedly received were contradictory. The Fall 2000 Booklet explained that after January 1, 2001 Allred was entitled to a life insurance benefit of two times base pay plus an additional payment of up to six times base pay in 100% increments. But the Enrollment Worksheet stated that Allred was entitled to the same benefits previously available: three times base pay plus an additional 175% of supplemental insurance plus $10,000 in Basic Life Insurance.[6] These contradictions logically cause one to question whether the notice was written "in a manner calculated to be understood by the average plan participant." Id. Even though Plaintiff is not entitled to rely upon the Enrollment Worksheet, its existence as part of the notice package could create such confusion that the notice was inadequate under ERISA. The Court has carefully considered this possibility.

However, the Court concludes that the notice of the plan changes did comply with ERISA even though the initial package may have been confusing. ERISA specifically requires that the employer furnish plan participants with the requisite notice within 210 days of the close of the year in which the amendment is adopted. 29 U.S.C. § 1022(a). In fact, Rohm and Haas corrected the worksheet calculations well within the 210 days allowed for a proper notice. Rohm and Haas sent Allred at least two letters that noted the reduction of benefits. One of the letters, apparently sent on April 7, 2001, stated that "[l]isted below is the coverage you'll receive

---

[6]The Enrollment Worksheet actually stated that after January 1, 2001 Allred's Employee Life Insurance coverage was going to be "Primary + 175% of Base Pay - $279,000" and his Basic life Insurance coverage was $10,000. The only to arrive at the $279,000 figure was to use the pre-2001 formula, multiplying his then salary of $58,425.00 by 4.75.

11

effective May 01, 2001 unless you call to change it."[7]  Under the heading "Employee Life Insurance," the letter described Allred's coverage as "Primary + 100% of Base Pay - $192,000." This formula reflected the coverage described in the Fall 2000 Booklet, except for the fact that it erroneously overstated his coverage by including the $10,000 Basic Life Insurance.  Rohm and Haas sent Allred a nearly identical letter on July 6, 2001.  That letter also stated that Allred was entitled to $202,000 in Life Insurance.  The Court concludes that it was reasonable for the Administrator to have found that Rohm and Haas met the requirements of § 1022(a) by clarifying any initial confusion through subsequent timely correspondence.

At the same time, Plaintiff cannot invalidate the amendment based on the notice that Rohm and Haas provided.  Inadequate notice of an amendment is not ordinarily sufficient grounds for substantive relief.  *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989).  The failure to provide adequate notice does not invalidate an amendment unless a beneficiary can show:  (1) active concealment by the employer; (2) significant detrimental reliance by the plan participant or beneficiary; or (3) some cognizable prejudice flowing from the violation.  *Lettrich*, 213 F.3d at 771; *Langman v. Laub*, 328 F.3d 68, 73 (2d Cir. 2003) (citing *Veilleux v. Atochem North Am., Inc.*, 929 F.2d 74, 76 (2d Cir. 1991) (per curiam)); *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 569 (7th Cir. 1995); *Godwin v. Sun Life Assur. Co. of Canada*, 980 F.2d 323, 328 (5th Cir. 1992).

Plaintiff has presented no evidence of active concealment.  The discrepancy between the Fall 2000 Booklet and Allred's Enrollment Worksheet appears to be the result of a careless mistake.  Substantial evidence of this is found in the conduct of Rohm and Haas.  It sent the Fall

---

[7] Allred received a pay raise effective March 1, 2001, which entitled him to a proportionally larger life insurance benefit.

2000 Booklet which accurately and clearly summarized the changes to Allred's plan. When Rohm and Haas discovered its mistake, it corrected the erroneous benefit calculations.

Plaintiff has presented no evidence that Allred detrimentally relied on or was prejudiced by Rohm and Haas's initial miscalculations. In fact, Plaintiff has made no allegation of detrimental reliance or prejudice at all. The record indicates that Allred received two letters accurately describing his new benefits. Each of these letters informed Allred that he had the right to change his coverage. However, Allred never took any steps to increase his coverage despite the full and accurate disclosure of the fact that his coverage had been reduced. Thus, there is no reason to believe that Plaintiff is entitled to pre-modification benefits based on Rohm and Haas's failure to provide adequate notice of the amendment. [8]

In the alternative, Plaintiff argues that Allred never personally received the Enrollment Booklet or the letters confirming the post-2000 coverage. However, like the failure to provide adequate notice, the failure to provide personal notice will invalidate an amendment only if the beneficiary can show active concealment or substantial prejudice. *Godwin*, 980 F.2d at 328. Here, has not offered sufficient evidence of either active concealment or prejudice for a reasonable jury to find that the modified Plan is unenforceable.

VI.

Rohm and Haas moves for summary judgment on Plaintiff's claim for penalties under

---

[8] Moreover, the Court has serious doubts as to whether Plaintiff properly asserted a claim for failure to meet ERISA's disclosure requirements. In her complaint, Plaintiff asserted a claim under 29 U.S.C. § 1132(a)(1)(B), which allows for a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of the plan." However, here Plaintiff is not seeking to obtain benefits under the terms of the Plan. Rather, she is seeking to reform the Plan by obtaining a declaration that the purported 2001 amendment is void. This claim should be asserted under 29 U.S.C. § 1132(a)(3), which authorizes a participant to bring an action to enjoin any act which violates either a provision of ERISA Title I or the terms of the plan, or to obtain other appropriate equitable relief to enforce any provisions of Title I or the terms of the plan. *See Ross v. Rail Car America Group Disability Income Plan*, 285 F.3d 735, 740-41 (8th Cir. 2002).

13

Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1).  Section 1132(c)(1) provides for penalties of up to $100 a day, at the discretion of the district court, for a plan administrator's failure or refusal to comply with a request for information which the administrator is required to furnish within 30 after the request.  29 U.S.C. § 1132(c)(1).  In this case, Plaintiff claims that she and her lawyer sent Rohm and Haas repeated written requests for the relevant Plan documents between April and November of 2002 and that Rohm and Haas failed to provide the required documents until August 24, 2004.

The principal issue in dispute is whether Rohm and Haas adequately responded to Plaintiff's written request for plan documents dated August 9, 2002.  In that letter, Plaintiff requested a copy of the Plan documents and the life insurance policies which were applicable to Allred's life insurance coverage in 2001.  After an investigation into the matter, Rohm and Haas sent Plaintiff copies of the relevant portions of two documents on January 9, 2003:  (1) the most-recent SPD and (2) the Fall 2000 Booklet.  However, Rohm and Haas did not send Plaintiff copies of the underlying Plan documents or the insurance policy itself until August 23, 2004.

Rohm and Haas had a duty to turn over each of the documents that Plaintiff requested on August 9 2002.  See 29 U.S.C. § 1024(b)(4).[9]  However, the Court finds that a discretionary penalty under section 1132(c)(1) is not warranted by the facts alleged here.  The SPD and the Fall 2000 Booklet that Rohm and Haas sent to Plaintiff in January of 2003 provided Plaintiff with all of the information she needed to assess a possible claim.  The Plan and the 2001 life insurance policy do not appear to contain any additional information relevant to Plaintiff's

---

[9]Section 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  These appear to be precisely the documents allegedly requested.

14

claims. Accordingly, the Court finds that Rohm and Haas made a good-faith attempt to comply with Plaintiff's request and its failure to comply with all of Plaintiff's requests did not prejudice Plaintiff in any meaningful way. Therefore, the Court finds that Plaintiff is not entitled to a penalty under 29 U.S.C. § 1132(c)(1). *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068-69 (6th Cir. 1994) (a district has the discretion to deny penalties under section 1132(c)(1) where it finds good-faith on the part of the defendant and a lack of prejudice to the plaintiff).

      The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record